# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: May 8, 2026

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | * | |
| LUIZ OLIVEIRA, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | No. 24-2044V |
| | * | |
| v. | * | Special Master Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Fact Finding; Severity Requirement; |
| AND HUMAN SERVICES, | * | Hepatitis A Vaccine; Meningococcal |
| | * | Vaccine; Guillain-Barré Syndrome ("GBS"). |
| Respondent. | * | |
| * * * * * * * * * * * * * * * | * | |

Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA, for Petitioner.
Michael Bliley, U.S. Department of Justice, Washington, DC, for Respondent.

## FACT RULING ON SEVERITY[1]

On December 12, 2024, Luiz Oliveira ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2018)[2] alleging that he suffered Guillain-Barre Syndrome ("GBS") as the result of Hepatitis A and meningococcal vaccinations administered on August 3, 2022. Petition at Preamble (ECF No. 1).

On June 27, 2025, Respondent filed his Rule 4(c) report, stating that "this case is not appropriate for compensation under the terms of the Vaccine Act." Respondent's Report ("Resp.

---

[1] Because this Ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018). All citations in this Ruling to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

Rept.") at 2 (ECF No. 18). In his Rule 4(c) report, Respondent argued "Petitioner has failed to demonstrate that he suffered the residual effects of GBS for more than six months from the onset of his symptoms on or around August 15, 2022," and thus, "his case must be dismissed for failure to meet the threshold requirement." Id. at 6.

Thereafter, Petitioner was directed to file evidence to support he met the severity requirement. Order dated June 30, 2025 (ECF No. 19). In August 2025, Petitioner filed three declarations. Petitioner's Exhibits ("Pet. Exs.") 15-17. In September 2025, the undersigned indicated that after a review of the evidence, she intended to find Petitioner had provided preponderant evidence in support of the severity requirement. Order dated Sept. 3, 2025 (ECF No. 24). The parties were afforded the opportunity to indicate whether they had any objections. Id. On September 26, 2025, Respondent objected and requested briefing on the issue of severity. Resp. Status Rept., filed Sept. 26, 2025 (ECF No. 28).

Thereafter, the parties filed their briefs. Pet. Motion for a Ruling on the Record ("Pet. Mot."), filed Oct. 27, 2025 (ECF No. 30); Resp. Response to Pet. Mot. ("Resp. Response"), filed Dec. 8, 2025 (ECF No. 33); Pet. Reply to Resp. Response ("Pet. Reply"), filed Dec. 22, 2025 (ECF No. 34). This matter is now ripe for adjudication.

After carefully analyzing and weighing the evidence presented in this case in accordance with the applicable legal standards,[3] the undersigned finds Petitioner provided preponderant evidence that he "suffered the residual effects or complications of [his] illness, disability, injury, or condition for more than [six] months after the administration of the vaccine." § 11(c)(1)(D)(i). Accordingly, the severity requirement is met.

## I.    BACKGROUND

The following facts establish that Petitioner suffered GBS and the residual effects of GBS for more than six months after vaccination.

### A.    Medical History

On August 3, 2022, Petitioner received hepatitis A and meningococcal vaccinations. Pet. Ex. 1 at 5-8.

---

[3] While the undersigned has reviewed all the information filed in this case, only those filings and records that are most relevant will be discussed. See Moriarty v. Sec'y of Health & Hum. Servs., 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though [s]he does not explicitly reference such evidence in h[er] decision."); Simanski v. Sec'y of Health & Hum. Servs., 115 Fed. Cl. 407, 436 (2014) ("[A] Special Master is 'not required to discuss every piece of evidence or testimony in her decision.'" (citation omitted)), aff'd, 601 F. App'x 982 (Fed. Cir. 2015); see also Paterek v. Sec'y of Health & Hum. Servs., 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

On August 16, 2022, Petitioner presented to HCA Florida Aventura Hospital complaining, in part, of tingling that began that morning.  Pet. Ex. 4 at 24.  The following day, he began exhibiting weakness and decreased sensation below the knees bilaterally.  Id. at 75.  Petitioner was diagnosed with GBS on August 23, 2022.  Pet. Ex. 6 at 109-10.

Petitioner attended physical therapy and occupational therapy for treatment of his GBS through October 2022.  Pet. Ex. 7 at 8, 16; Pet. Ex. 14 at 1.  On November 7, 2022, Petitioner had a follow-up visit for his GBS.  Pet. Ex. 7 at 1295-96.  He was able to walk without his rolling walker, although he did report tingling in his feet and left hand.  Id. at 1296.  He had run out of gabapentin, but thought he was able to discontinue it, so he did not request a refill.  Id.  Petitioner's physician noted that Petitioner was at his "baseline functional status" and did not need any additional rehabilitation.  Id. at 1298.  Muscle testing and gait and balance were normal.  Id.

From November 2022 to February 2024, Petitioner presented to his primary care physician 13 times for blood work or medication unrelated to his GBS; no neurological complaints were noted during these visits.  See generally Pet. Ex. 2.

Fifteen months later, on February 26, 2024, Petitioner returned to Memorial Healthcare for a follow-up visit.  Pet. Ex. 7 at 1316.  He reported that he was "doing really well but ha[d] residual tingling sensation on the tips of his fingers and toes."  Id.  Gabapentin was prescribed.  Id.

At a follow-up visit on August 26, 2024, Petitioner again reported residual tingling in his hands and feet.  Pet. Ex. 12 at 9, 11.

## B.      Declarations

Petitioner filed three declarations to support a finding that he suffered the residual effects or complications of his GBS for more than six months after vaccination.  See Pet. Exs. 15-17.  These declarations discuss Petitioner's ongoing GBS sequelae, including numbness and tingling in his extremities.

Petitioner's first declaration, executed December 6, 2024, explains that after his diagnosis and intensive physiotherapy and rehabilitation, he flew home to Brazil to be close to his family and friend while continuing physiotherapy.  Pet. Ex. 10 at ¶ 11.  While in Brazil, he saw a neurologist, who followed his progress with therapy.  Id.  He returned to the United States in November 2022 to obtain clearance to return to work.  Id. at ¶ 12.  "Even though the symptoms of numbness never went away, [he] was able to perform basic everyday tasks and get back to work."  Id.  He adapted and learned to live the residual symptoms, which prevent him from doing "minor things."  Id.  Petitioner "did [] holistic treatments at home such as massage creams, cold plunges, [and] heating gloves, [] but nothing really seemed to work."  Id. at ¶ 14.  As of December 6, 2024, Petitioner continued to have numbness in his fingers and toes.  Id. at ¶¶ 15-16.

Petitioner's supplemental declaration, dated August 28, 2025, maintained that he

3

continued to suffer numbness in his hands and feet.  Pet. Ex. 15 at ¶ 1.  Regarding the lack of medical treatment, he explained that "[he] never felt that [his] ongoing symptoms were severe enough to warrant consistent ongoing treatment."  Id. at ¶ 2.  He was not sure how he would benefit from seeing a doctor since he did not want to continue taking Gabapentin.  Id.  Petitioner also explained the financial hardships he would have endured if he continued with frequent doctor visits that would require time off work.  Id. at ¶ 3.  Petitioner explained that he

> chose not to pursue ongoing formal treatment due to the significant time and financial demands of frequent doctor appointments.  As the sole breadwinner in [his] household, [he] rel[ies] entirely on [his] job for survival and could not afford to take additional time off for treatments that seemed ineffective.  Instead, [he] turned to home therapy and alternative healing methods, such as creams and massage techniques, which allowed [him] to manage [his] symptoms while maintaining [his] work schedule.

Id.

Petitioner's sister, Cinthia Oliveira, and Petitioner's mother, Vera Lucia Oliveira, also provided declarations addressing Petitioner's ongoing sequela and addressing the financial hardships that affected Petitioner's treatment.  See Pet. Exs. 16-17.  Petitioner's sister stated that "even without being fully recovered, he went back to the United States, experiencing pain, constant tingling, and major sensory limitations, since he could not risk losing the job that guarantees his livelihood."  Pet. Ex. 16 at ¶¶ 4-6.  Similarly, Petitioner's mother explained that Petitioner "had to return to work despite still experiencing pain and numbness in his hands and feet."  Pet. Ex. 17 at ¶ 1.

## II.   PARTIES' CONTENTIONS

Petitioner contends "the evidence in this matter objectively demonstrates Petitioner suffered the residual effects of his injury for well beyond the six month requirement despite a gap in formal treatment."  Pet. Mot. at 9.  Petitioner argues that because he did not receive formal medical care for his GBS for the six-month period does not mean he was not suffering residual effects of his GBS.  Id. at 11-12 (citing Herren v. Sec'y of Health & Hum. Servs., No. 13-100V, 2014 WL 3889070 (Fed. Cl. Spec. Mstr. July 18, 2014) (finding the petitioner's residual symptoms that, due to their mild nature, did not require medical care and a discharge from medical care does not equate to a lack of residual symptoms); Maxwell v. Sec'y of Health & Hum. Servs., No. 21-1877V, 2023 WL 6208754 (Fed. Cl. Spec. Mstr. Aug. 15, 2023) (finding the severity requirement met despite a treating physician noting the petitioner "clinically . . . made a complete resolution" and had "no obvious neurologic deficits")).  Additionally, Petitioner maintains that a gap in treatment "does not render [his] claim unmeritorious, only that it bears on damages."  Id. at 13.

Respondent argues that Petitioner's symptom onset was approximately August 15, 2022, and therefore, to satisfy the six-month statutory provision, Petitioner must demonstrate that he suffered the residual effects or complications of his GBS through February 15, 2023, which he has not done.  Resp. Response at 6.  Respondent contends Petitioner's "neurological symptoms

4

fully resolved around the time of his outpatient rehabilitation and by his November 7, 2022 appointment," when he was noted to be at "baseline functional status." Id. at 6-7 (quoting Pet. Ex. 7 at 1298). Respondent acknowledges that Petitioner reported increased symptoms at his appointment on August 26, 2024, but argues "this alone does not show preponderant evidence of sequelae from a vaccine-related injury." Id. at 7. Further, Respondent maintains the declarations deserve minimal weight as they are less probative than contemporaneous medical records. Id. at 7-8.

## III.    SEVERITY REQUIREMENT

### A.    Legal Standard

To receive compensation, Petitioner must show that he

(i) suffered the residual effects or complications of [his] illness, disability, injury, or condition for more than six months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury, or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

§ 11(c)(1)(D).

Compensation is not available under the Vaccine Act for minor illness which are short-lived. Wright v. Sec'y of Health & Hum. Servs., 22 F.4th 999, 1001-04 (Fed. Cir. 2022). Cases may appropriately be dismissed for failure to substantiate the severity requirement. See, e.g., Hinnefeld v. Sec'y of Health & Hum. Servs., No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's GBS resolved less than two months after onset). It is Petitioner's burden to prove his case, including the six-month requirement, by a preponderance of the evidence. See § 13(a)(1)(A). To satisfy the six-month requirement, "[a] potential petitioner must do something more than merely submit a petition and an affidavit parroting the words of the statute." Faup v. Sec'y of Health & Hum. Servs., No. 12-87V, 2015 WL 443802, at *3 (quoting Black v. Sec'y of Health & Hum. Servs., 33 Fed. Cl. 546, 550 (1995), aff'd, 93 F.3d 784, 792 (Fed. Cir. 1996)). A petitioner cannot establish the length or ongoing nature of an injury merely through their own statements, but rather is required to "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months." Black, 33 Fed. Cl. at 550; see also Lett v. Sec'y of Health & Hum. Servs., 39 Fed. Cl. 259, 260-61 (1997) ("Section 300aa-13(a)(1) provides that a special master may not award compensation 'based on the claims of [a] petitioner alone, unsubstantiated by medical records or by medical opinion.'").

The Federal Circuit recently addressed the six-month severity requirement in Wright. 22 F.4th at 1001. The petitioner's child suffered immune thrombocytopenia purpura ("ITP"), a condition characterized by abnormally low platelet counts, bruising, and bleeding, after receipt of the MMR vaccination. Id. The child's ITP resolved in less than three months, and although he had later episodes of bruising, testing showed that his platelet count remained normal. Id. at 1003-04. The Circuit held that the petitioner failed to satisfy the six-month requirement when

5

the platelet count normalized less than three months post-ITP onset because "relatively non-invasive ongoing [platelet] monitoring" was not a "residual effect" pursuant to § 11(c)(1)(D)(i). Id. at 1001, 1003, 1006-07. The Circuit noted that the child's later bruising was not related to his vaccine injury and that ongoing testing "did not reveal, constitute, or cause any somatic change." Id. at 1001.

Defining the language in § 11(c)(1)(D)(i), the Circuit ruled that "[t]he term 'residual effects' . . . requires a change within the patient that is caused by the vaccine injury." Wright, 22 F.4th at 1004. It continued, stating that "'[r]esidual' suggests something remaining or left behind from a vaccine injury . . . . Because vaccine injuries are somatic conditions defined by their signs and symptoms within the patient, . . . their residues are similarly defined." Id. at 1005-06 (internal citations omitted). Further, the words "suffered" and "complication" in association with "residual effects" in § 11(c)(1)(D)(i) "suggest that Congress contemplated residual effects to be detrimental conditions within the patient, such as lingering or recurring signs and symptoms." Id. at 1006. The Circuit concluded that "[r]ead together, 'residual effects' and 'complications' appear to both refer to conditions within the patient, with 'residual effects' focused on lingering signs, symptoms, or sequelae characteristic of the course of the original vaccine injury, and 'complications' encompassing conditions that may not be 'essential part[s] of the disease' or may be outside the ordinary progression of the vaccine injury." Id.

### B.    Analysis

Given the medical records and declarations, the undersigned finds Petitioner suffered GBS and its residual effects for more than six months as required by the severity requirement in the Vaccine Act. Overall, the undersigned finds Petitioner's arguments to be consistent with the facts and applicable law. Specifically, the undersigned finds that Petitioner's ongoing numbness and tingling are residual effects of his GBS, that they were caused by his GBS, and that they continued, as evidenced by Petitioner's declarations, for several years after the onset of his GBS, and are ongoing.

Regarding the 15-month gap in treatment, the undersigned finds it is "relevant to damages;" however, it does not mean that severity cannot be established. Lambert v. Sec'y of Health & Hum. Servs., No. 21-1275V, 2025 WL 1078788, at *6 (Fed. Cl. Spec. Mstr. Mar. 10, 2025); see also Rodionov v. Sec'y of Health & Hum. Servs., No. 20-0842V, 2023 WL 8112948, at *5 (Fed. Cl. Spec. Mstr. Oct. 13, 2023) (noting a gap in treatment "is not per se evidence that [a petitioner's] pain had lapsed entirely" and finding financial reasons for a gap in treatment to be a "reasonable explanation for the gap in care"); Smith v. Sec'y of Health & Hum. Servs., No. 21-409V, 2023 WL 9288086, at *10 (Fed. Cl. Spec. Mstr. Dec. 11, 2023) ("[T]he lack of evidence of continuous treatment does not prevent a finding that severity of the injury persisted beyond six months of onset.").

The undersigned acknowledges the 15-month gap in treatment here but also recognizes, based on her experience and knowledge adjudicating claims involving GBS, that the residual symptoms of numbness and tingling reported by Petitioner are very common after post-vaccination GBS. For the reasons explained by Petitioner, the undersigned finds it is reasonable that he did not seek treatment during the 15-month period. The undersigned further finds that the

6

15-month gap does not represent a gap in Petitioner's residual symptoms of GBS, but that he has had these residual effects since he suffered GBS.  Therefore, the undersigned finds that Petitioner has provided preponderant evidence that the severity requirement has been met.

## IV.    CONCLUSION

Given the undersigned's findings in this Ruling, the undersigned directs the parties to file expert reports on causation and responding to the issues raised in Respondent's Rule 4(c) report. Petitioner shall file an expert report **by Tuesday, July 7, 2026**.  Respondent may file an expert report **60 days thereafter**.

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master